[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 55, (d.o.b. 3/15/47) whose maiden name is Amielis, and the defendant husband, 58, (d.o.b. 10/12/44) married on December 14, 1970 in New York County, New York. There are two children issue of the marriage, Michael Benjamin born April 20, 1983 and Annette Nicole born July 16, 1984. The family moved to Connecticut in 1982 to a home the parties purchased located at 176 Byram Shore Road, Greenwich for $230,000, puffing $110,000 down. The court finds that the current fair market value to be $1,200,000 (Defendant's Exhibit A). It is currently encumbered by a first mortgage balance of $267,000 and a second mortgage balance of $75,000. The plaintiff continues to occupy the premises.
On October 31, 1986 the parties purchased a two/three family house located at 161 East Elm Street, Greenwich for $355,000. The down payment was raised by the plaintiff by refinancing the first mortgage on the marital home and by giving a second mortgage to pay their various credit cards. The plaintiff rented the lower level in the marital home and the East Elm property brought in three rents. The defendant's appraiser found the fair market value of the East Elm property to be $650,000 which the court accepts, (Defendant's Exhibit B). It is currently encumbered by a mortgage balance of $170,000 The defendant has been occupying the premises since November, 2001.
The plaintiff is a college graduate with a B.A. in accounting and computer science. She was employed for 19 years by a firm located in New York city until October, 1993 when the company was sold. She received a pension lump sum of $120,535. (Plaintiffs Exhibit #5) She rolled $75,000 into an IRA at Dime Savings Bank, $25,000 into an IRA at Bank of New York and deposited the balance into her checking account. The defendant waived his interest in her pension to enable her to receive the pension refund. From November, 1993 to January, 1996 the plaintiff was not employed outside the home. She did volunteer work at the children's school and also worked on the two real estate parcels. In 1994 she claimed she used $26,000 of her pension IRA to cover the budget shortfall primarily caused CT Page 344 by the monthly mortgage installments (Plaintiffs Exhibit #4). She submitted similar accountings for 1995 and 1996 claiming $55,606 and $42,351.18 respectively. Included in the 1996 accounting is summer school gifted students' tuition for both children at George School, their son's Bar mitzvah, and credit card payments. The court concludes that the money from plaintiffs pension refund has all been spent. The explanation given is flawed for she fails to account for the tax liability created by the various withdrawals made by the plaintiff. More recently the plaintiff had been employed by Genova Partners of Greenwich until September 30, 2002. For the year 2001 her employer paid her gross wages of $65,565.21. When terminated she received $1562 for two weeks pay, $650 vacation time and $3412.50 bonus. At the time of trial she was looking for work. She had a 401k account with this recent employer. One comment of the plaintiff assigned a value of $20,000 to her pension refund received upon termination. When terminated from her position as controller she was being paid $32.50 per hour. She testified that she borrowed $10,000 from said pension money to pay the mortgage installments due on the marital home and used $10,000 less $2,000 penalty to pay tuition costs.
The defendant became employed by Columbia Records on June 16, 1969 and is still employed as a senior high tech engineer by the same business that is now part of SONY Music Entertainment, Inc., 460 West 54th Street, New York City earning gross weekly $1,418.87 for 40 hours base pay. He does receive some overtime. In addition to the various tax deductions there are deductions for medical, dental and life insurance and IBEW Union dues. He also contributes 4.0% of his base salary to the Employee Investment Fund (EIF) which is matched by SONY. As of 8/31/2001 his ELF account contained $87,052 (PlaintifPs Exhibit #2). Each week he has $117.92 deducted for his EIF Loan and an additional $56.75 deducted for his ELF account. Through his 11/02/2002 pay statement he had repaid $5,188 to his EIF Loan, had $2,455 paid to his EIF account which his employer matched, all as shown on his financial affidavit filed with the court on 11/08/02. The court infers that his ELF account has increased, in 2002 through 11/02/2002, by $10,098. He has a vested pension that had a lump sum benefit payable as of 03/01/2002 of $289,030.71 which is its present value for it provides him with a life annuity of $1,834.69 monthly starting on 03/01/2002 (cf. said financial affidavit).
He has life insurance basic coverage equal to his annual base salary $71,286 and he was enrolled for supplemental coverage equal to 3 times base salary of $213,858. He has also enrolled in basic accidental death coverage of $71,286 and supplemental ADD insurance of $350,000. He turned over his salary to his wife who managed all the family finances during the marriage, sharing little information with the defendant despite his inquiries. CT Page 345
The defendant is a recovering alcoholic who was treated about 1990 at Hazeldon, Minn., as an inpatient under the Employee Assistance Program available at SONY. He relapsed around 1993 and drank to excess until he entered a Greenwich Hospital program around 1997. Since November, 2001 he has maintained his sobriety.
Their son will graduate from college this coming May. Their daughter will graduate from college this coming July if she completes certain courses given in the May to July time frame costing $12,000. This expense appears to be the only unpaid college education cost. The court notes that Public Act No. 02-128 excludes graduate or post-graduate education beyond a bachelor's degree. The daughter is a talented professional dancer who has traveled extensively, often accompanied by her mother. Both children are now adults and, except for the 2002 public act mentioned, are beyond the jurisdiction of this court in this case. The court notes same for several of the plaintiff's claims for relief ask the court for orders that are outside its jurisdiction. The plaintiff has acted pro se throughout this action.
For 2001 the plaintiff filed a Form 1040, married filing separate return, with a Schedule C listing herself as "Personal Manager" for Annette Nicole for the business "Ballroom Dancing — Representing USA in the World" with gross receipts of income $9000 and awards $1162. Deductions totaled $16,232 resulting in a loss of $7,232. On the same return she submitted a Schedule E for 161 E. Elm Street listing rents received $26,465 and total expenses of $49,766.62 including depreciation of $17,495.41 and mortgage interest of $13,377.36 $6950.17 with a loss of $23,301.62. The return lists Taxable Income $2003.73 and tax liability of $302, (Defendant's Exhibit G). For 2001 the plaintiff had gross cash income of $102,180.21 before taxes, deductions and exemptions. The court has engaged in this analysis to demonstrate the earning capacity and ability of the plaintiff.
The evidence presented a somewhat murky explanation of the financing of college for their children but both parties agreed that the defendant withdrew $28,000 in 2001 from his ELF account to cover $16,000 of the son's college bills and $12,000 of the daughter's college bills (Plaintiffs Exhibit #8) thereby incurring an income tax liability to I.R.S. over $15,000. The defendant is paying it back via payroll deduction as described supra. On April 8, 2002 the plaintiff filed a financial affidavit dated April 8, 2002 in which she listed three creditors; Sears, Macy's and Patricia Gelpi (computer #118). The plaintiff executed a financial affidavit dated 4/11/02 and filed in court on 4/22/02 listing four creditors: Patricia Gelpi $1,600; Sears $1070; CT Page 346 Macy's $790 and 401k loan $10,000 (Defendant's Exhibit D computer #120-10). The plaintiff filed a financial affidavit with the court on November 7, 2002 listing as creditors, in addition to Sears $1,050 and Macy's $150, "College 4+4+4+6+6+4+4 $32,000" and "College for 2003" $43,000. The son obtained one or more Pell grants. The court concludes that both children were furnished college educations from the joint marital assets of the parties and the court will not attempt to reapportion what has been paid.
Both parties contributed to the marriage breakdown. The plaintiff made all the financial decisions unilaterally. Although she is knowledgeable in financial matters she incurred obligations despite the defendant's objections. She failed to realize that alcoholism is a disease. She gives little weight to the fact that the defendant's earnings were turned over to her since their marriage. The defendant's withdrawal from family activities and his alcoholism also seriously strained the marriage. The marriage was irretrievably broken down some time prior to the final separation.
On July 9, 2002 this court entered pendente lite orders for alimony and child support that resulted in an arrearage of $4,000. The defendant was ordered to pay $50 weekly on same until paid in full together with $100 weekly periodic alimony by way of an immediate wage withholding order pursuant to Sec. 52-362 Conn. Gen. Stat.
The plaintiff has requested a surname change to Benjamin. Section 46b-63
limits the court's power to restoring the birth name or former name as part of a dissolution decree.
The court has considered the evidence in light of relevant case law and the relevant statutes and enters the following decree.
1. Judgment is entered dissolving the parties' marriage on the ground of irretrievable breakdown and each is now declared to be unmarried.
2. The defendant shall pay to the plaintiff the sum of $100 weekly as periodic alimony, taxable to the payee and deductible by the payer, until the death of either party, the remarriage or cohabitation by the plaintiff, the retirement of the defendant, or future court order. This order is modifiable as to both term and amount. An immediate wage withholding order is ordered The plaintiff shall pay to the defendant the sum of one dollar per year until the death of either party, the retirement, remarriage or cohabitation of the defendant or future court order. This order is modifiable as to both term and amount. CT Page 347
3. The plaintiff is awarded sole ownership of 176 Byram Shore Road, Greenwich, Ct. She shall be solely responsible for payment of the mortgages, taxes, insurance and maintenance and shall hold the defendant harmless and indemnified. Within six months the plaintiff shall cause the defendant's name to be removed from the mortgage obligations by novation, refinance, sale, or other means and, if not done, the premises shall then be sold. The court shall retain jurisdiction to enforce this order and either party may move the court for articulation or clarification in the interim. The time limit may be extended for good cause.
4. The defendant is awarded sole ownership of 161 East Elm Street, Greenwich, Ct. He shall be solely responsible for payment of the mortgage, taxes, insurance and maintenance and shall hold the plaintiff harmless and indemnified. Within six months the defendant shall cause the plaintiffs name to be removed from the mortgage obligation by novation, refinance, sale, or other means and, if not done, the premises shall then be sold. The court shall retain jurisdiction to enforce this order and either party may move the court for articulation or clarification in the interim. The time limit may be extended for good cause.
5. The plaintiff is awarded thirty per cent (30%) of the defendant's pension. The parties shall cooperate in submitting a QDRO acceptable to SONY for the court's signature.
6. The defendant shall retain his ELF account as his sole property free of any claim by the plaintiff and he shall be solely responsible for repayment of the ELF loan.
7. The defendant shall not hamper the plaintiff in the exercise of any of her COBRA medical insurance rights.
8. An educational support order is entered for the benefit of their daughter Annette for the remaining $12,000 of college expense not yet paid. Each party shall pay half (50%) of same with the defendant paying his share to the plaintiff who shall forward both payments to the school. The court finds it more likely than not that such educational support would have been provided if the family were intact.
9. The defendant shall continue to maintain the plaintiff as the primary beneficiary on his SONY basic life insurance for so long as he is obligated to pay periodic alimony.
10. The parties shall retain such other assets as each now possesses and they shall each be solely responsible for the debts each has listed as liabilities on the respective financial affidavits.
SO ORDERED.
 ___________________ HARRIGAN, J.T.R. CT Page 348
[EDITORS' NOTE: This page is blank.] CT Page 349